608 So.2d 881 (1992)
FLORIDA DEPARTMENT OF REVENUE, Appellant,
v.
A. DUDA & SONS, INC., Appellee.
No. 91-2585.
District Court of Appeal of Florida, Fifth District.
October 30, 1992.
Rehearing Denied December 3, 1992.
*882 Victoria L. Weber, Gen. Counsel and Lisa R. Echeverri, Asst. Gen. Counsel, Dept. of Revenue, Tallahassee, and Robert A. Butterworth, Atty. Gen., Joseph C. Mellichamp, III, Sr. Asst. Atty. Gen., Jeffrey M. Dikman, and Kevin J. O'Donnell, Asst. Attys. Gen., Tallahassee, for appellant.
Darryl M. Bloodworth and Renee A. Roche of Dean, Mead, Egerton, Bloodworth, *883 Capouano & Bozarth, P.A., Orlando, for appellee.
GOSHORN, Chief Judge.
The Department of Revenue appeals from the final judgment entered in favor of A. Duda & Sons, Inc., pursuant to an order granting Duda's summary judgment motion. In the trial court, Duda successfully challenged the Department's assessment of documentary stamp taxes on certain conveyances made to public entities under threat of condemnation. The Department argues the trial court erred (1) in ruling that section 201.01, Florida Statutes (1987) as amended was ambiguous; (2) in holding that Duda's constitutional right to full compensation would be impaired if Duda was required to pay documentary stamp taxes; and (3) in permitting Duda to rely upon the tax immunity of an exempt governmental body. We reverse.
In 1988, Duda executed three deeds in favor of public entities under threat of condemnation. No documentary stamp tax was paid on any transaction. The parties agreed that no documentary stamp tax was due on the first deed to Brevard County because no consideration was paid. However, in 1989, the Department assessed Duda with liability for documentary stamp taxes, interest, and penalties totalling $68,925.33 on a second deed to Brevard County and on a deed to the St. Johns River Water Management District. In October 1990, the Department agreed to abate the penalties totalling $14,193.80, but upheld its assessment of documentary stamp taxes. Duda filed a declaratory judgment complaint asking that the trial court declare no stamp taxes are due. After a hearing, the trial court entered judgment in favor of Duda, agreeing that the statutory authority for assessing the tax was ambiguous and must be construed in favor of Duda and that payment of the tax by Duda would have impaired Duda's constitutional right to full compensation. The trial court concluded that section 201.01 as applied was unconstitutional.
Section 201.01, Florida Statutes (1991) provides that specified taxes must be levied and collected on certain documents. It provides in pertinent part:

Unless exempt under s. 201.24 or under any state or federal law, if the United States, the state, or any political subdivision of the state is a party to a document taxable under this chapter, any tax specified in this chapter shall be paid by a nonexempt party to the document. The documentary stamp taxes required under this chapter shall be affixed to and placed on all recordable instruments requiring documentary stamps according to law, prior to recordation. With respect to mortgages or trust deeds which do not incorporate the certificate of indebtedness, a notation shall be made on the note or certificate that the tax has been paid and that the proper stamps have been affixed to the mortgage or trust deed. [Emphasis added].
The underlined portion of the statute became effective on June 30, 1987. Ch. 87-102, §§ 6, 29, Laws of Fla. It is undisputed that this amendment was in effect on the date of the conveyances at issue.
However, a problem arises because a contrary Department of Revenue rule was also in effect at the time of the conveyances. Florida Administrative Code Rule 12B-4.14(15)(b) provided that a conveyance of realty to a municipality, county, state, or the United States made "under threat of condemnation" was not subject to the documentary stamp tax. The Department of Revenue did not amend its rules to conform with the amended statute until 1989.[1]
Duda successfully argued to the trial court that the 1987 amendment to section 201.01 was ambiguous and that the legislative intent of the amendment was unclear. The asserted ambiguity stems from the failure of the statute to expressly *884 address transactions made under threat of condemnation. Duda also construes the phrase "unless exempt under section 201.24 or under any state or federal law" to include case law exemptions predating the 1987 statutory amendment, not just statutory exemptions. Duda does not contend that the deeds are exempt under the provisions of section 201.24, which relate to governmental debt, nor has Duda cited any other statutory provision which would exempt the deeds from the plain language of the statute.
We find Duda's arguments without merit. First, the language of section 201.01 is clear. If a political subdivision of the state is a party to a taxable deed transaction, the tax must be paid by the nonexempt party to the document. This language is broad enough to encompass conveyances made under threat of condemnation. We reject the suggestion that every possible transaction giving rise to a taxable document must be listed in the statute for the transaction to be covered by the statute.
Second, a conflict between a statute and an administrative rule, which rule was promulgated prior to a statutory amendment and enacted in reliance on case law existing prior to the amendment, does not give rise to an ambiguity in the statute. In the event of a conflict between a statute and an administrative regulation on the same subject, the statute governs. Nicholas v. Wainwright, 152 So.2d 458, 460 (Fla. 1963); Canal Ins. Co. v. Continental Casualty Co., 489 So.2d 136, 138 (Fla. 2d DCA 1986). A regulation is operative and binding from its effective date "until it is modified or superseded by subsequent legislation ... and it expires with the repeal of the statute from which it gains its life." Hulmes v. Division of Retirement, Dept. of Admin., 418 So.2d 269, 270 (Fla. 1st DCA 1982), review denied, 426 So.2d 26 (Fla. 1983). The regulation relied on by Duda was superseded by the 1987 statutory amendment and was of no force or effect on the date of Duda's conveyances.[2] Thus, no conflict or ambiguity existed in the instant case. To the contrary, the plain statutory language governed.
Even assuming arguendo that some ambiguity exists in the statute, the legislature's intent in adopting the amendment is not in doubt. The Senate Staff Analysis and Economic Impact Statement, dated May 7, 1987, provides:
For many years, transactions between nonexempt parties and governmental entities were held taxable unless exempted by state or federal law, the nonexempt party being liable for the tax. Early Florida Supreme Court cases upheld this principle. But in 1986, the Florida Supreme Court declared that all parties to documents representing transactions in which governmental entities were parties were totally exempt from the documentary stamp tax and the Department was prohibited from collecting the tax on such documents.
Proposed Changes: Provides that, except as otherwise exempt under state or federal law, the documentary stamp tax is to be paid by a party to a document other than the United States, the state, or a political subdivision of the state if any such governmental entity is a party to the document.
The legislature clearly intended to supercede any conflicting pre-1987 case law and return the law to its previous state, i.e., to make the nonexempt party liable for the documentary stamp tax unless that party is otherwise exempt under state or federal law.
Duda next argues that if it were required to pay the documentary stamp taxes, then it would be deprived of its constitutional right to full compensation. See Art. X, § 6(a), Fla. Const. ("No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."). See also U.S. Const. amend. V ("[N]or shall private property be *885 taken for public use, without just compensation."). In response, the Department contends that the right to receive "full compensation" or "just compensation" does not include the right to receive tax free proceeds.
To support its contention, the Department relies on Fullilove v. United States, 71 F.2d 852 (5th Cir.1934). In Fullilove, the plaintiffs sold land to the city "under the imminence of expropriation" at a price agreed upon by the parties. Id. at 853. The Internal Revenue Service taxed the plaintiffs on their profit. Id. The plaintiffs argued that
if required to pay income taxes on the profit received from the sale of their land, they would to the extent of such payment be deprived of the just compensation secured to them by the Fifth Amendment to the Constitution of the United States, and by a similar provision of the Constitution of Louisiana.
Id. The court rejected the plaintiffs' argument, noting that the city had fully compensated the plaintiffs for their property and that the city could not have been required to pay more than its value:
Appellants are not in [a] position to claim they did not receive just compensation for their land, since the price was fixed by an agreement to which they were parties. It makes no difference that, if they had not agreed upon a price and made the sale voluntarily, the city would have taken their property under the power of eminent domain. There is no claim on their part of coercion, or that they could have obtained a better price by going to court.
Id. at 854.
We agree with the Department's contention and find that the logic of Fullilove applies here. If taxation of capital gains realized from a sale made under threat of condemnation is constitutional, then no legal or logical reason exists why taxation of a deed given under similar threat is not also constitutional. Duda and the tax exempt public entities came to a voluntary agreement concerning a fair price, i.e., full compensation, for the property.
Full compensation for property taken by eminent domain consists of two elements, the value of the property taken and severance damages to the remainder, if any. Division of Admin., State Dept. of Transp. v. Grant Motor Co., 345 So.2d 843, 845 (Fla. 2d DCA 1977). Full compensation is limited to payment for loss of tangible property. Id. at 846. As to intangibles, business damages and lost profits are not included in the term full compensation.
The payment of compensation for intangible losses and incidental or consequential damages, however, is not required by the constitution, but is granted or withheld simply as a matter of legislative grace.
Tampa-Hillsborough County Expressway Auth. v. K.E. Morris Alignment Serv., Inc., 444 So.2d 926, 928 (Fla. 1983).
In short, compensation is constitutionally required for the physical property taken, but recovery for intangible damages is governed by legislative largesse. The legislature has seen fit to require compensation for business damages under section 73.071, Florida Statutes (1991), and for costs, attorney's fees, and appraisal fees under section 73.091, Florida Statutes (1991). However, no statute provides for the recovery of the documentary stamp tax fees paid by the condemnee as a consequence of a forced sale. As previously noted, section 201.01 expresses the legislature's intent to the contrary. Accordingly, we hold that the imposition of the documentary stamp tax on a conveyance made pursuant to a voluntary agreement by the parties before the filing of a petition for eminent domain, does not impair or implicate the constitutional right to full compensation for property taken for public use.
REVERSED and REMANDED.
W. SHARP, J., and GRIDLEY, W.C., Associate Judge, concur.
NOTES
[1] Currently, Rule 12B-4.014 provides that judgments and decrees in eminent domain proceedings by which title to real property is vested in the condemnor are not subject to the documentary stamp tax unless a deed is given. Rule 12B-14.002(3) explicitly states that a city, county, or the state is not liable for the tax on a taxable transaction, but the transaction itself is not exempt. The nonexempt party to the transaction is liable for the tax.
[2] Duda makes no argument that it was misled by or relied upon the regulation at the time that it entered into the agreement to sell its property.